**STEINBERG et al. v. LEBUS et al.**
**Civ. A. No. 1703.**

District Court, E. D. Louisiana,
New Orleans Division.

Oct. 12, 1946.

Julian L. Steinberg, of New Orleans, La., for plaintiffs.

C. Paul Barker and Thomas A. Adair, both of New Orleans, La., for defendants.

CAILLOUET, District Judge.

The complainants allege that their suit is one of a civil nature in which the matter in controversy exclusive of interest and costs, exceeds the sum or value of $3,000, and arises under the Constitution of the United States, i. e., under the Fifth and Fourteenth Amendments thereof.

They secured a restraining order from this Court on October 8, 1946, against one of the named defendants, i. e., John F. Lebus, individually, and as Regional Director, 15th Region, National Labor Relations Board, and all persons in active concert or participation with him, restraining, enjoining, and prohibiting the holding of a hearing at the Court House of the Parish of St. Mary, State of Louisiana, in Franklin, the parish seat, at 10 o'clock a. m., October 9, 1946, in the matter of "Morris Steinberg and Julian Leslie Steinberg, a Louisiana Partnership, d/b/a Steinberg & Company, and Southern Fur Trappers' Branch of the International Fur & Leather Workers' Union of the United States and Canada, C.I.O., Case No. 15–C–1089"; or the holding of any "future hearing in connection therewith".

At the same time, the Court ordered that there forthwith issue a rule to show cause why a preliminary injunction should not be granted, directed to said John F. Rebus, individually, and as Regional Director aforesaid, and made returnable on October 11, 1946 at 10 o'clock a. m.

On said date and at said time, the Court then sitting, a motion to dissolve the restraining order, and a motion to dismiss the complaint, were first filed and submitted to the Court for decision, on behalf of the said John F. Rebus, and both were denied, for the reasons then and there given by the Court and duly reported.

Complainants contend that a preliminary injunction should now issue against the holding of the scheduled hearing hereafter, because, they aver,

1. Under the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], no jurisdiction exists in the National Labor Relations Board, nor in said John F. Lebus, Regional Director, 15th Region, to so hold said hearing; and that their contemplated act is "illegal, arbitrary, capricious and unjustified, and * * * without color of authority", and would result in "depriving plaintiffs of their property without due process of law in violation of the fifth and 14th amendment of the Constitution of the United States."

2. Plaintiffs have made every effort to have the Regional Director aforementioned, the National Labor Relations Board, and said Board's designated Trial Examiner for said scheduled hearing, first hold a special hearing limited to the Board's official determination of the question whether or not such Board is vested with jurisdiction to hold a hearing on the complaint against plaintiffs, founded on the charge of Southern Fur Trappers' Branch, International Fur & Leather Workers' Un-

ion of the United States and Canada, affiliated with the Congress of Industrial Organizations, what they, the plaintiffs, as asserted employers of labor have engaged in unfair labor practice against their asserted employees, when they, said plaintiffs, earnestly protest that no situation of labor employment exists and that they, the plaintiffs, are not employers, but lessors or sublessors, and all persons contracting with them for the trapping of fur-bearing animals on marsh lands controlled by plaintiffs are not employees, but merely lessees or sublessees; and that, despite such efforts, both said Regional Director and said Trial Examiner, and said Board as well, have denied plaintiffs' well-founded request, although both Trial Examiner and Board have advised plaintiffs that they are reserved the privilege to renew their motion to dismiss filed with the Trial Examiner aforesaid, at the close of the contemplated hearing, and to file exceptions to said Trial Examiner's intermediate report within the prescribed time.

3. Should such scheduled hearing be permitted to take place, then, and in that event, the holding of such hearing at this time of the year will work substantial irreparable injury upon plaintiffs, inasmuch as the agents of plaintiffs have already gone upon the leased marsh lands controlled by plaintiffs, for the purpose of preparing the same for advantageous trapping during the coming 1946–1947 trapping season, which commences on November 20, 1946, and the trappers who lease from plaintiffs will, themselves, repair to their leased lands shortly, in preparation for their trapping operations thereon at the opening of the legal trapping season; inasmuch as such a hearing will necessarily consume several weeks, preventing the many witnesses that it will be necessary to summon for attendance at such hearing from so establishing themselves upon their leased lands and making needed preparations for actual trapping on and after November 20, 1946; which lack of preparation will cause "the consequential loss of thousands of dollars". Furthermore, plaintiffs will be subject to the production of their books and documents, and will be required to take the witness stand at an illegal hearing, and will be subjected to much useless expense, aggravation, annoyance; and waste of time, while said hearing will "throw in doubt the status of the trappers with whom plaintiffs deal"; such a hearing will place upon plaintiffs the burden of transporting witnesses from all over South Louisiana, at a great expense, and will cause plaintiffs to disclose confidential information and trade secrets pertaining to their business "which might get into the hands of its (their) competitors and potential buyers"; and, finally, such a hearing "will cause great confusion among plaintiffs' lessors, sub-lessees, agents and buyers since the Board is attempting to change a relationship that all parties have considered to exist for over twenty years."

4. They have exhausted their administrative remedies, have no adequate remedy at law, and will suffer substantial irreparable injury if such scheduled hearing be not temporarily enjoined, etc.

▆ Thus, as set out under the four captions hereinabove appearing, do plaintiffs plead. But even though no jurisdiction exists in the Board, under the rather clear and definite provisions granting it authority to hold hearings, and even though the present fixed determination of both Trial Examiner and the National Labor Relations Board appears to be that the suggestion of the Court in the decision of the Circuit Court of Appeals for the Fifth Circuit, in the case of Bradley Lumber Co. of Arkansas et al. v. National Labor Relations Board et al. (84 F.2d 97, at page 100) is worthy of scant attention, this Court cannot find in the record before it the requisites for the granting of a preliminary injunction. It is true that if the National Labor Relations Board does actually proceed to hold such hearing and, during the course thereof, or by reason thereof, plaintiffs, because of the Board's, or its agents', acts beyond the limits of its, or their, authority, are threatened with great and irreparable injury, and plaintiffs are without adequate remedy at law, equity may then and there step in to restrain such unlawful conduct, the record now before the Court is bare, to all intent and purpose, of such a showing as would justify the interposition of equity. The exis-

tence of a right violated is a prerequisite to the granting of an injunction, and to authorize a Court to grant a temporary injunction, the complainant must, certainly, make out at least a prima facie showing of a right to final relief before such Court. Plaintiffs not only still have available administrative remedies, and may or may not participate in any such hearing as may actually be embarked upon, at their election, and always may seek the protection of the Court against any threatened compulsion of claimed unlawful order granted and sought to be enforced against them; but, the mere fact that certain trappers with whom plaintiffs deal in the claimed relation of lessor and lessee, or sublessors and sublessees, for the trapping of marsh lands controlled by plaintiffs, during the 1946–1947 trapping season which commences on November 20, 1946, have been summoned, or may hereafter be summoned, to appear at such hearing to give testimony at the hearing and will thereby be prevented from now repairing to the trapping lands leased, where trapping operations cannot legally begin until November 20, 1946; nor the mere fact, also, that one or more of plaintiffs' agents may temporarily be made to absent themselves for, but a few days at the most, while attending the hearing for the giving of testimony under like summons, cannot reasonably be considered to presage substantial irreparable injury to plaintiffs.

The Court's findings of fact and conclusions of law are summarized as follows, to-wit:

### Findings of Fact.

1. No right of plaintiffs is violated by the attempt of the National Labor Relations Board to convene and hold the hearing in contemplation, at this time.

2. Even if such finding be incorrect, no case of substantial irreparable injury to plaintiffs as the proximate result of the holding of such hearing has been made out.

### Conclusions of Law.

1. In any event, and even though both of the findings of fact be incorrect, plaintiffs have a plain, adequate and complete remedy at law in the Federal Courts to protect them against any unlawful act, directed against any right that they enjoy, during the course, or by reason, of the National Labor Relations Board's contemplated hearing.

2. There should be denial of the prayer for a preliminary injunction.

In view of the foregoing, let judgment be entered dissolving the restraining order of October 8, 1946, as no longer effective, and denying the prayer for a preliminary injunction.