[L. A. No. 20494.   In Bank.   June 16, 1948.]

GERRY OF CALIFORNIA (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Knight, Gitelson & Ashton and Alfred Gitelson for Petitioner.

David Sokol and John C. Stevenson for Respondents.

SHENK, J.—The petitioner seeks the writ of mandamus to direct the respondent, the Superior Court in and for the County of Los Angeles, to assume jurisdiction of an application for an injunction in an action brought in that court against various labor unions and officers thereof. The alternative writ issued and the matter is submitted on a general demurrer to the petition.

The record shows the following facts which for the purpose of this proceeding are deemed to be true:

The petitioner, herein also called the plaintiff or the company, is a California corporation with its principal place of business in Los Angeles County. It manufactures women's wearing apparel from finished piece goods, supplies and trimmings for the most part purchased outside of the state and shipped to petitioner within the state. The finished articles to the extent of approximately 80 per cent are sold and delivered outside the state. The petitioner employes about 140 persons in production and shipping.

The petitioner's employees are unorganized. On November 4, 1947, the defendant unions, particularly International Ladies' Garment Workers Union, Pacific Coast Regional Office, and Western Warehouse Council of the International Brotherhood of Teamsters (A. F. of L.), sought to organize the employees of petitioner and placed a picket line around its place of business. On that date the company signed an agreement with the unions to enter into negotiations, but it was also agreed that neither party would enforce the union shop clause unless the employees voted to authorize such an agreement pursuant to section 9 of the National Labor Relations Act (July 5, 1935, ch. 372, 49 Stats. 449, 453, 29 U.S.C.A. §§ 151, 159) as amended by the Labor Management Relations Act, 1947 (ch. 120, tit. 1, § 101, 61 Stats. 136,

herein also called the 1947 act). On November 12th, the Gerry Employees' Association, comprising 116 of the employees, filed with the National Labor Relations Board a petition seeking an election and certification of itself as the bargaining agent of the Gerry employees. At the same time a petition was filed by an employee with the board alleging that the agreement of November 4, 1947, had been entered into without the participation and approval of a majority of the employees. On November 25th, the company filed with the board its consent and stipulation to the holding of an election by the employees. The record shows no action on the foregoing matters before the board. Although the uncertified unions continued their picketing operations, including secondary boycott activities, no complaint or charge was filed by the company with the board for relief pursuant to the 1947 act. None of the employees left their jobs.

In December, 1947, a complaint for injunction and damages was filed by the company in the respondent court charging that the picketing and concerted secondary boycott activities were unlawful under the 1947 act, alleging damages and the continuation of injury unless the union activities were enjoined. A hearing was had on the return to an order to show cause during the course of which by objection the defendant raised the issue of the respondent court's jurisdiction to grant equitable relief. The court concluded that the company was engaged in interstate commerce and that the union activities sought to be enjoined were subject to the provisions of the 1947 act. The objection was sustained. The court ruled that it had no jurisdiction to proceed with the cause of action for equitable relief and would refuse to exercise jurisdiction thereof unless commanded by this court to do so. No question is here presented as to the jurisdiction of the court to entertain the cause of action for damages.

Mandamus is an appropriate remedy to compel the exercise of jurisdiction by a superior court. (*Middlecoff* v. *Superior Court,* 220 Cal. 410 [31 P.2d 200]; *Katenkamp* v. *Superior Court,* 16 Cal.2d 696, 698 [108 P.2d 1], and cases cited; *Miller* v. *Municipal Court,* 22 Cal.2d 818, 852 [142 P.2d 297], and cases cited.) The only question now presented is whether the court correctly refused to assert its jurisdiction to enjoin the peaceful picketing and secondary boycott activities by uncertified unions for the purpose of organizing the nonstriking employees.

It should be noted that the union objective and the means employed to attain it were not unlawful insofar as the law of this state is concerned. Inasmuch as the majority of this court, in *In re Blaney,* 30 Cal.2d 643 [184 P.2d 892], invalidated the hot cargo and secondary boycott law of 1941, there is no California statute or decision which declares unlawful the objective or method of obtaining it pursued by the unions. At the hearing the plaintiff agreed that the activities sought to be enjoined were peaceful and that there was no state law pursuant to which the company could obtain equitable redress. The petitioner invokes sections 8(b) and 303 of the Labor Management Relations Act, 1947, as furnishing the law pursuant to which the respondent court must exercise the equity jurisdiction conferred by section 5 of article VI of the state Constitution.

For present purposes it will be sufficient, without setting out the specific provisions, to note that section 8(b) of the 1947 act declares it to be an unfair labor practice affecting interstate commerce for a labor organization to engage in the concerted activities specified in the record. Accordingly it is assumed that the alleged activities on the part of the uncertified unions are unfair labor practices as designated by that section. Section 303(a) declares the same practices unlawful "for the purposes of this section only." Subsection (b) states: "Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States . . . or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

It is the petitioner's argument that the state courts have concurrent jurisdiction with the federal courts to enforce rights created by a federal statute. Inasmuch as the laws of the United States are as binding on citizens and courts as state laws, state courts competent to exercise it have concurrent jurisdiction with the federal courts to enforce federal law unless expressly or by necessary implication withheld by federal statute, and the existence of jurisdiction creates the duty to exercise it. (*Martin* v. *Hunter's Lessee* (1816), 1 Wheat. (14 U.S.) 304 [4 L.Ed. 97] ; *Claflin* v. *Houseman* (1876), 93 U.S. 130 [23 L.Ed. 833] ; *Second Employers' Liability Cases,* 223 U.S. 1 [32 S.Ct. 169, 56 L.Ed. 327] ; *McKnett* v. *St. Louis & S. F. Ry. Co.,* 292 U.S. 230 [54 S.Ct.

690, 78 L.Ed. 1227].) In *Bethlehem Steel Co.* v. *New York State· Labor Relations Board* (April, 1947), 330 U.S. 767 [67 S.Ct. 1026, 1029, 91 L.Ed. 1234], it was recognized as a settled rule that exclusion of state action may be implied from the nature of the legislation and the subject matter although express declaration of that result be wanting (citing *Napier* v. *Atlantic Coast Line R. Co.*, 272 U.S. 605 [47 S.Ct. 207, 71 L.Ed. 432]). At the same time the Supreme Court also pointed out that Congress had not seen fit to lay down even a general guide to the construction of the National Labor Relations Act as it sometimes does (referring to the Securities Act of 1933, § 18, 48 Stats. 85, 15 U.S.C.A. § 77r; Securities Exchange Act of 1934, § 28, 48 Stats. 903, 15 U.S.C.A. § 78bb; United States Warehouse Act, § 29, 39 Stats. 490, 46 Stats. 1465, 7 U.S.C.A. § 269) by saying that its regulation either shall or shall not exclude state action. This court has also recognized that when the question is whether a state court may take jurisdiction of matters arising under a federal law inquiry is first directed to the intention of Congress in that regard. (*Miller* v. *Municipal Court, supra*, 22 Cal.2d 818, 836.) Therefore, whether concurrent state jurisdiction exists is a matter to be determined from a construction of the act itself.

▉ A proper conclusion depends in part upon the construction of the act before the 1947 amendments. Pursuant to section 10 of the National Labor Relations Act (49 Stats. 453, 29 U.S.C.A. § 160), the National Labor Relations Board was empowered, upon issuing a complaint and notice, to conduct a hearing on a charge of employer unfair labor practices defined in the act and to issue a cease and desist order, together with orders for affirmative relief. Such orders were enforced by petition to the Circuit Court of Appeals which was empowered to conduct a hearing and render a decree (including temporary injunctive relief) enforcing, modifying and enforcing, or setting aside the order of the board. For the purposes of section 10, the limitations imposed by the Norris-LaGuardia Act (47 Stats. 70, 29 U.S.C.A. §§ 101-115) upon the issuance of restraining orders and injunctions in cases involving labor disputes were removed.

By section 10(a) before amendment the power thus reposed in the National Labor Relations Board was made "exclusive" and not "affected by any other means of adjustment or prevention that has been or may be established by agreement,

code, law, or otherwise." In *Amalgamated U. Workers* v. *Consolidated Edison Co.*, 309 U.S. 261, 264 [60 S.Ct. 561, 84 L.Ed. 738], the Supreme Court said, with reference to providing the remedy for the specified unfair labor practices: "Within the range of its constitutional power, Congress was entitled to determine what remedy it would provide, the way that remedy should be sought, the extent to which it should be afforded, and the means by which it should be made effective." The Supreme Court pointed out that the course of procedure was definite and restricted; that the board and the board alone could determine whether an employer had engaged in an unfair labor practice; that the board was chosen as the instrument or agency, exclusive of any private person or group, to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce, and that the board alone was authorized to take proceedings to enforce its order. The sole authority of the board to secure prevention of unfair labor practices affecting commerce was thus recognized. That section 10 of the National Labor Relations Act committed to the board the exclusive power to decide whether unfair labor practices by the employer had been engaged in and to determine the action that should be taken to remove or avoid the consequences thereof was again stated in *National Licorice Co.* v. *National Labor Relations Board*, 309 U.S. 350, at p. 365 [60 S.Ct. 569, 84 L.Ed. 799]. Also, *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1, 46-47 [57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352], and *Myers* v. *Bethlehem S. Corp.*, 303 U.S. 41, 48-50 [58 S.Ct. 459, 82 L.Ed. 638], upheld as constitutional the vesting of the exclusive power in the board. The most recent pronouncement of the Supreme Court to come to our attention is in *Bethlehem Steel Co.* v. *New York State Labor Relations Board, supra* (67 S.Ct. 1026, reversing 295 N.Y. 601 and 607 [64 N.E.2d 350]), wherein it was held that state and federal action covering the subject matter of the National Labor Relations Act could not coexist. Similarly in *Blankenship* v. *Kurfman* (1938), 96 F.2d 450, 454, it was held that the National Labor Relations Act might not be construed as intending to create rights for employees which could be enforced in federal courts independently of action by the National Labor Relations Board; that it was clear that the only rights which were made enforceable by the act were those which had been de-

termined by the board to exist under the facts of each case, and that when determined the method of enforcing them provided by the act must be followed. In *Fur Workers Union, Local 72* v. *Fur Workers Union,* 105 F.2d 1, with reliance on the Blankenship case, such double jurisdiction was likewise held to be contrary to the intent manifested by the provisions of the National Labor Relations Act. (See, also, *Styles* v. *Local 74,* 74 F.Supp. 499.)

The Supreme Court of the United States has also recognized the application of the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" — referring to the application to the National Labor Relations Board for determination of the factual issues and the appropriate relief designated in the National Labor Relations Act. (*Myers* v. *Bethlehem S. Corp., supra,* 303 U.S. at pp. 50-51, citing numerous cases; see, also, *Newport News Co.* v. *Schauffler,* 303 U.S. 54 [58 S.Ct. 466, 82 L.Ed. 646]; *United Brick & Clay Workers* v. *Junction City Clay Co.,* 158 F.2d 552; *Steinberg* v. *Lebus,* 71 F.Supp. 121, 124.)

In a different category are cases such as *Allen-Bradley Local No. 1111* v. *Wisconsin Employment Relations Board,* 315 U.S. 740, 748-749 [62 S.Ct. 820, 86 L.Ed. 1154], wherein it was held that the state's exercise of its police power (e. g., the prevention of mass picketing of the employer's factory, threatening personal injury or property damage to employees desiring to work, obstructing entrance to and egress from the employer's factory, obstructing the streets and public roads, picketing the homes of employees, and other breaches of the peace in connection with labor disputes) was not intended to be excluded by the provisions of the National Labor Relations Act, and that the exercise of that power by the state could stand consistently with the operation of the federal act. State power in the field not occupied by the National Labor Relations Act has been appropriately exercised or recognized in other cases. (*Carpenters & Joiners Union of America* v. *Ritter's Cafe,* 315 U.S. 722 [62 S.Ct. 807, 86 L.Ed. 1143]; *United Electrical R. & M. Workers* v. *Westinghouse Electric Corp.,* 65 F.Supp. 420, 421; *Northwestern Pac. R. R. Co.* v. *Lumber & S. W. Union,* 31 Cal.2d 441, 445 [189 P.2d 277], and cases cited; *Park & T. I. Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599, 603, 608 [165 P.2d 891, 162 A.L.R.

1426]; *James* v. *Marinship Corp.,* 25 Cal.2d 721, 743-744 [155 P.2d 329, 160 A.L.R. 900]; *Bautista* v. *Jones,* 25 Cal.2d 746 [155 P.2d 343]; *Fansteel M. Corp.* v. *Lodge 66 of A. Assn. etc.,* 295 Ill.App. 323 [14 N.E.2d 991]; *Wisconsin Labor Relations Bd.* v. *Reuping Leather Co.,* 228 Wis. 473 [279 N.W. 673, 117 A.L.R. 398 and note].) Cases relied on which were decided before the 1947 act (assuming they involved interstate commerce), in which peaceful picketing for unlawful purposes has been enjoined by state action are therefore not in point. Under the National Labor Relations Act before amendment by the 1947 act, unfair labor practices on the part of employee organizations were not included within the jurisdiction of the National Labor Relations Board. It was therefore a sphere in which action could be initiated in the courts.

As noted, the National Labor Relations Act before its amendment by the 1947 act did not define or place within the scope of the National Labor Relations Board's jurisdiction unfair labor practices on the part of labor organizations. By section 8(b) of the 1947 act the conduct charged to the defendant unions in this case is declared to be unfair labor practices.

Prior to the 1947 amendment the powers of the board under section 10 of the act were limited to the issuance of cease and desist orders against employers, after investigation and hearing, and the enforcement thereof by petition to the Circuit Court of Appeals for injunction and other process. Concurrently with the inclusion by the 1947 act of declared unfair labor practices by labor organizations (§ 8(b)), Congress deemed it expedient to provide accelerated means for obtaining injunctive orders. Under the 1947 act a temporary restraining order may be obtained after the issuance of a complaint by the board as to *any* unfair labor practice, by petition filed in the United States District Court, upon notice and hearing (§ 10(j)). In certain cases of unfair labor practices by labor organizations designated in section 8(b), the duty to apply for temporary injunctive relief is mandatory whenever preliminary investigation by the board indicates reasonable cause for belief that the charge is true (§ 10(1)). Section 10(h) removes the restrictions and limitations upon the equity jurisdiction of United States courts imposed by the Norris-LaGuardia Act insofar as action by the National Labor Relations Board is concerned. (See *Bakery Sales Drivers Local Union No. 33* v. *Wagshal* (March 15, 1948), 333 U.S. 437 [68 S.Ct. 630, 92 L.Ed. ——].)

The provisions of section 303(a) of the 1947 act restricting the unlawfulness there declared to the purposes of that section discloses an intent not to authorize criminal prosecutions for the commission of the specified unfair labor practices by labor organizations. The section then permits suits in district courts of the United States and other courts having jurisdiction of the parties for the recovery of damages occurring from the "unlawful" acts on the part of labor organizations. This is the only jurisdiction over suits by private parties which is expressly recognized by the act. In designating the nature of the board's power in section 10(a) of the 1947 act, Congres omitted the word "exclusive" from the National Labor Relations Act. The petitioner argues that the omission implies an intent to permit injunctive relief as well as damages at the suit of parties injured by the designated unfair labor practices committed by labor organizations. But in amending that section to eliminate the word "exclusive," Congress also added a proviso empowering the National Labor Relations Board by agreement to cede to state agencies jurisdiction in any industry (with certain exceptions) although a labor dispute affecting interstate commerce was involved, where the local regulatory provisions were consistent with the federal act. The word "exclusive" would be inconsistent with the exercise of ceded power by agencies created pursuant to the state regulatory legislation invited by the proviso.

The provisions of the 1947 act show an intent to preserve the functional purposes of the National Labor Relations Act with increased objectives, and an intent not to confer powers on the courts at the suit of private parties with the exception of the jurisdiction expressly granted, which does not include the exercise of equity powers. This intent is also indicated by the record of the conference and committee reports and congressional debates.

The pertinent portions of those reports and debates were reviewed by the Fourth Circuit Court of Appeals in *Amazon Cotton Mill Co.* v. *Textile Workers Union of America,* 167 F.2d 183 (No. 5720, decided April 1, 1948). The appeal in that case involved the jurisdiction of the federal district court under the National Labor Relations Act as amended by the 1947 act to issue an injunctive order at the suit of a labor organization. A mandatory injunction theretofore issued by the district court required the employer to bargain collectively with a union of its employees. It was concluded that the his-

tory of the National Labor Relations Act and the decisions rendered thereunder made it clear that the purpose of the act was to establish a single paramount administrative authority in connection with the development of federal law regarding collective bargaining; that the only rights made enforceable were those determined by the National Labor Relations Board to exist under the facts of each case; that there was nothing in the text or the history of the enactment of the 1947 act which indicated a departure from the foregoing purposes or policies, or showed any intention to vest jurisdiction in the courts except to the limited extent that jurisdiction was expressly conferred; that only under section 303 was jurisdiction given to entertain actions brought by private parties and then only to render judgments for damages arising out of jurisdictional strikes and boycotts. That court also reached the conclusion from a study of the new act and the conference reports that the purpose of omitting the word ''exclusive'' from section 10(a) of the National Labor Relations Act was merely to synchronize with the power reposed in the board the added elements of jurisdiction expressly vested in the courts and which may be ceded to state agencies under the 1947 proviso of said section. The court said: ''There is nothing in the history of the act, the reports of committees or the debates in Congress which even vaguely supports the contention that its effect was to vest jurisdiction in the District Courts to grant relief against unfair labor practices. Everything said by anyone remotely bearing on the matter is to the contrary. . . . It is hardly thinkable that, if the effect of the Labor Management Relations Act was to make a fundamental change in the jurisdiction to deal with unfair labor practices, this important fact would not have dawned upon some member of the House or the Senate and would have been referred to in the course of the lengthy debate of a measure that was passed over a Presidential veto. That no such suggestion was made gives ample support to the interpretation which, as we have already indicated, we would place upon the text of the act if the history of its passage and the Congressional debates were not available to us.'' The court mentioned cases in trial courts where injunctive relief had been denied. (*Douds* v. *Wine, Liquor & Distillery Workers Union*, 75 F.Supp. 447; *Fitzgerald* v. *Douds*, 76 F.Supp. 597, Southern District of New York; and the present case), and referred to the disastrous consequences to any successful

administration of the labor law, and the repugnance to the orderly administration of justice, if courts should take coordinate jurisdiction with the National Labor Relations Board to restrain unfair labor practices. The court also noted the absurdity which would result from unauthorized court actions at the suit of labor organizations, since Congress clearly intended to withhold redress on a charge of unfair labor practices made by a labor organization unless the latter had filed certain financial statements and affidavits (§ 9(f), (g), (h)). Not overlooked was the possibility that unusual cases might arise where courts of equity could be called upon to protect the rights created by the act. But the court recognized that the case involved nothing out of the ordinary, that the procedure before the board provided an adequate administrative remedy, and that the extraordinary powers of a court of equity could not be invoked until the administrative remedy had been exhausted, citing *Newport News Co.* v. *Schauffler*, 91 F.2d 730, affirmed *supra*, 303 U.S. 54 [58 S.Ct. 466, 82 L.Ed. 646]. No question is here presented as to what the situation would be if the petitioner had exhausted its administrative remedy.

The reasons for concluding that express jurisdiction was not conferred on federal trial courts at the suit of a private party to restrain alleged unfair labor practices, as held in the Amazon Cotton Mill Company case, likewise compel the conclusion that the nature and purpose of the act preclude state action in the field of the jurisdiction vested in the National Labor Relations Board except to the extent that it has been expressly conferred or ceded, and that this is so whether such action be initiated by an employer or by a labor organization. General language in *Park & T. I. Corp.* v. *International etc. of Teamster, supra,* 27 Cal.2d at p. 604 et seq., and *Lillefloren* v. *Superior Court,* 31 Cal.2d 439, 440 [189 P.2d 265], indicating that the state courts might enjoin union activities affecting interstate commerce if engaged in for an unlawful purpose is not controlling here. It is necessarily restricted to the period prior to the effective date of the 1947 act when no administrative remedy was afforded to prevent unfair labor practices on the part of labor organizations.

Other contentions do not require specific notice. The petitioner makes much of the fact that the defendant unions, as alleged in the complaint in the action, have not filed the required financial reports and affidavits under the 1947 act

which are a prerequisite to the exercise of jurisdiction by the National Labor Relations Board to proceed on a charge of unfair labor practice made by a labor organization. It is claimed that the unions' failure to file such reports and affidavits justifies the present action for injunctive relief against them at the suit of the employer. It is a sufficient observation in this respect to say that here it is the employer who is asserting unfair labor practices on the part of labor organizations. The employer as well as the union is now required by the 1947 act to proceed before the board to obtain appropriate relief from unfair labor practices affecting interstate commerce. The alleged cause of action for injunctive relief presents matters for the board to determine in the first instance pursuant to the exercise of power vested by the National Labor Relations Act as amended by the 1947 act. There is nothing in the act as so amended which indicates that these unions may not thus be subject to the appropriate procedure thereby provided. Inasmuch as the filing of the required documents by labor organizations is not made a prerequisite to the exercise of jurisdiction by the board on a charge of unfair labor practices made by an employer, there is no showing of inadequacy of the available administrative remedy.

The alternative writ is discharged and the peremptory writ is denied.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

Petitioner's application for a rehearing was denied July 15, 1948.