[Civ. No. 4848. Fourth Dist. Apr. 27, 1954.]

CLYDE O. DYER et al., Respondents, v. THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 542 et al., Appellants.

Walter Wencke for Appellants.

Gray, Cary, Ames & Frye for Respondents.

MUSSELL, J.—Plaintiffs are engaged in the business of packing, warehousing and transporting household furniture and other goods in San Diego County. They employ six drivers and packers and their business affects interstate commerce. It is alleged in the complaint, which is for damages and injunctive relief, that on or about June 23, 1953, the defendants presented to plaintiffs a certain purported agreement with defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 542, and demanded that they sign the same; that the said contract contained the following provisions:

"Section 2: The Company and the Union agree that all employees covered by this Agreement shall become and remain members of the Union in Good standing as a condition of employment.

"Section 2-a: Whenever Employer requires additional employees for work covered by this Agreement, Employer shall first call upon the Union. If the Union is unable to supply Union members acceptable to Employer, he may hire non-union men with the provision that all non-union men must make application for membership in the Union within ten (10) days from the date of his employment, and must complete his application within thirty one (31) days from date of employment, and if found by the Union to be a qualified person, the Union agrees to accept such employee as a member of the Union.

"Section 2-b: Upon notice by the Union that any employee is not in good standing, the Employer shall have a maximum of five (5) days to replace such employee. Such replacements shall be employed in accordance with the provision of this Agreement applying to New Employees."

That said defendant had not been certified by the National Labor Relations Board as a representative of any employee of plaintiffs; that said defendant had not been designated and is not the collective bargaining agent for the employees of plaintiffs; that plaintiffs cannot execute said contract or any other contract containing a clause requiring a union-shop unless and until plaintiffs' employees select and designate said defendant labor organization as their collective bargaining agent because it would interfere with the collective bargaining rights secured to the employees by the National Labor Relations Act; that defendant nevertheless has placed and now maintains pickets around plaintiffs' place of business; that by the placing of the picket line about said place of business, defendant intended to compel plaintiffs to enter into said agreement and did not intend to induce plaintiffs' employees to join defendant's labor organization; that by the use of said pickets, and by other means, including threats to engage in a secondary boycott in violation of the National Labor Relations Act, and in order to compel plaintiffs to execute said agreement, defendant has induced a number of persons to cease doing business with plaintiffs and defendant refuses to permit plaintiffs to pack and ship household furniture out of the State of California; and that it has induced persons and firms to refuse to make deliveries to plaintiffs to their damage in the sum of $2,000.

Defendant, in its answer, admitted presenting the contract set forth in the complaint to plaintiffs and alleged that it was so presented at the request of plaintiffs; denied that de-

fendant demanded that plaintiffs sign said contract; admitted that defendant was not certified by the National Labor Relations Board as the bargaining representative of the employees of plaintiffs; alleged that defendant has forwarded to the National Labor Relations Board an "unfair labor practise charge" against the plaintiffs; that the "union-shop" clause is not one on which defendant summarily insists and alleged that defendant was then and now is willing to delete said clause from any contract which may be negotiated between the parties; that a solitary picket was placed before the business of plaintiffs; that certain literature was distributed during the course of the picketing, which said literature set forth the advantages of membership in defendant union and invited plaintiffs' employees to join it; that the purpose of said picketing and distribution of literature was to induce the employees of plaintiffs to join said defendant union.

Plaintiffs filed affidavits to the effect that prior to the picketing they informed defendant that they would not sign a contract covering their employees unless a majority wanted the union to represent them; that plaintiffs arranged a meeting between the men and the union; that a considerable portion of plaintiffs' business consists of packing and shipping household goods of Navy personnel; that after the commencement of the picketing, plaintiffs were informed by a Navy representative that the Navy could no longer issue requisitions on interstate shipments to be packed by plaintiffs because the defendant union would picket vans of interstate carriers; that the Navy canceled requisitions upon said ground; that drivers approaching plaintiffs' place of business were spoken to by pickets or union representatives and thereupon diverted loads consigned to plaintiffs to other warehouses; that the picketing was for the purpose of injuring plaintiffs' business and generally consisted of one or more men, including officers of the defendant union, carrying signs and one or more men sitting in an automobile.

It is stated in the affidavit of the business representative of defendant union that two of the employees of plaintiffs were members of the teamsters union on "withdrawal cards"; that affiant is informed and believes that said employees desisted from applying for active membership in the teamsters union because of pressure by plaintiffs; that affiant presented the contract alleged in plaintiffs' complaint to plaintiffs and informed them that the two said "withdrawal card" members had expressed the desire that they be represented by the

teamsters union in their dealings with plaintiffs' company; that affiant is informed and believes that one Jack Eastman, another "withdrawal card" member of the union, was prevented by employer pressure asserted by plaintiffs from reapplying for active membership in the teamsters union; that plaintiff Clyde O. Dyer, Jr., informed affiant that he would sign the union contract "If his people wanted it"; that affiant was informed by said Dyer that two of his people desired representation but that four did not; that affiant informed Dyer that he could not stipulate to a consent election at the time because of unfair labor practices of the employer; that affiant informed plaintiffs that he would cause a solitary picket to be placed in front of each of the premises of the Dyer Van and Storage Company to distribute literature to the employees and that from July 7, 1953, through July 23, 1953, the teamsters union did in fact maintain a solitary picket in front of each of the said premises, which picket distributed certain literature attached to said affidavit.

Plaintiffs' application for a preliminary injunction was heard on the pleadings and on these affidavits. The trial court then issued the order and amended preliminary injunction from which defendant appeals. The order in so far as material here is:

". . . whereas it appears to the court that the defendants have picketed the plaintiffs' place of business in order to compel the plaintiffs to execute the contract heretofore demanded by defendant which contains a union shop provision although the defendants, The International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 542, have not been properly designated as collective bargaining representatives of plaintiffs' employees or an appropriate unit thereof, and requires them to hire new employees through the union;

"Now, THEREFORE, IT IS ORDERED that the defendants, The International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 542, be, and you, and each of you, said defendants and your officers, agents, employees, members, and all others acting on your behalf, are hereby restrained and enjoined, pending the determination of this action, from engaging in or conducting any picketing of plaintiffs' place of business, inducing prospective customers of the plaintiffs to refuse to permit the plaintiffs to pack household furniture to be shipped out of the State of Cali-

fornia on other truck lines or doing any other act to injure or intended to or tending to injure the plaintiffs' business.''

Appellant contends that the trial court had no jurisdiction to issue said order and preliminary injunction. We are in accord with this contention.

Plaintiffs allege in their complaint that they could not sign the union-shop contract until the defendant union was the certified collective bargaining agent of their employees; that signing such a contract would be an interference with the collective bargaining rights secured to such employees by the National Labor Relations Act. Section 158, 29 U.S.C.A. 1953 Cumulative Annual Pocket Part, page 48, provides, among other things, that it is an unfair labor practice for an employer to encourage membership in a labor organization by discriminating in hire terms on conditions of employment (§ 158 (a) (3)) and for a labor organization to force or require an employer to recognize or bargain with a labor organization as a representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of the title. (§ 158 (4) (b).)

In *Standard Grocer Co.* v. *Local No. 406 of A. F. of L.*, 321 Mich. 276 [32 N.W.2d 519, 529] it was held that where picketing was carried on for an unlawful purpose, namely to coerce plaintiff into signing a contract with defendant union and to force plaintiff to coerce its employees into joining defendants' union, an injunction was proper, even though such picketing was peaceful; that the picketing was partially unlawful because an employer subject to the act may not encourage or discourage membership in any labor organization, and may contract only with the representative of the majority. It was further held therein that ''The determination of the purpose or object sought to be accomplished by picketing is one of fact.''

In the recent case of *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. ——], petitioners were engaged in the trucking business and had 24 employees, four of whom were members of respondent union. The trucking operations formed a link to an interstate railroad. No controversy, labor dispute or strike was in progress, and at no time had petitioners objected to their employees joining the union. Respondents, however, placed rotating pickets, two at a time, at petitioner's loading platform. None were employees of petitioner. They carried

signs reading "Local 776 Teamsters Union (A. F. of L.) wants Employees of Central Storage & Transfer Co. to join them to gain union wages, hours and working conditions." Picketing was orderly and peaceful but drivers of other carriers refused to cross this picket line and, as most of petitioners' interchange of freight was with unionized concerns, their business fell off as much as 95 per cent. The court below found that respondents' purpose in picketing was to coerce petitioners into compelling or influencing their employees to join the union and concluded, after reviewing the National Labor Management Relations Act (29 U.S.C.A., § 141 et seq.) that such provisions for a comprehensive remedy precluded any state action by way of a different or additional remedy for the correction of the identical grievance. The Supreme Court said:

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State, through its courts, may adjudge the same controversy and extend its own form of relief. . . .

"We conclude that when federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. To the extent that the private right may conflict with the public one, the former is superseded. To the extent that public interest is found to require official enforcement instead of private initiative, the latter will ordinarily be excluded. Of course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit.

"On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

In *Gerry of Calif.* v. *Superior Court,* 32 Cal.2d 119 [194 P.2d 689], it was held that under the National Labor Relations Act as amended in 1947, the State court has no jurisdiction, at the suit of a private person to enjoin union activities affecting interstate commerce when covered by the federal act. It was there said, quoting from *Amalgamated U. Workers* v. *Consolidated Edison Co.,* 309 U.S. 261, 264 [60 S.Ct. 561, 84 L.Ed. 738]:

" 'Within the range of its constitutional power, Congress was entitled to determine what remedy it would provide, the way that remedy should be sought, the extent to which it should be afforded, and the means by which it should be made effective.' The Supreme Court pointed out that the course of procedure was definite and restricted; that the board and the board alone could determine whether an employer had engaged in an unfair labor practice; that the board was chosen as the instrument or agency, exclusive of any private person or group, to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce, and that the board alone was authorized to take proceedings to enforce its order. The sole authority of the board to secure prevention of unfair labor practices affecting commerce was thus recognized."

It was further said: "The provisions of the 1947 act show an intent to preserve the functional purposes of the National Labor Relations Act with increased objectives, and an intent not to confer powers on the courts at the suit of private parties with the exception of the jurisdiction expressly granted, which does not include the exercise of equity powers. . . . The employer as well as the union is now required by the 1947 act to proceed before the board to obtain appropriate relief from unfair labor practices affecting interstate commerce. The alleged cause of action for injunctive relief presents matters for the board to determine in the first instance pursuant to the exercise of power vested by the National Labor Relations Act as amended by the 1947 act. There is nothing in the act as so amended which indicates that these unions may not thus be subject to the appropriate procedure thereby provided."

In *In re DeSilva*, 33 Cal.2d 76 [199 P.2d 6], an employer had secured an injunction on the ground that the picketing was unlawful under the Labor Management Relations Act, 1947, since there had been no certification of a union representative. It was there held that the injunction issued was void, its object being to accomplish something which was within the exclusive jurisdiction of the National Labor Relations Board under the terms of the federal act. In commenting on the Gerry case, *supra*, the court said:

''This court there held that the declared intent and purpose of the Labor Management Relations Act, 1947, was to vest exclusive jurisdiction in the National Labor Relations Board over unfair labor practices affecting interstate commerce and to vest in the courts generally jurisdiction only of action for damages arising out of the commission of such practices, and that the act deprived the superior courts of original equitable jurisdiction in such cases.''

In the instant case the finding of the trial court was that defendant picketed plaintiffs' place of business in order to compel them to execute the contract containing union-shop provisions when the union had not been properly designated as the collective bargaining representative of plaintiffs' employees and the injunction was based on that factual situation, which is similar to that presented in *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776, supra.* It clearly appears that the trial court was without jurisdiction to issue the preliminary injunction as its object is to accomplish that which is within the exclusive jurisdiction of the National Labor Relations Board under the terms of the federal act.

The picketing carried on by defendant in the instant action was admittedly peaceful and as was said in *Shafer* v. *Registered Pharmacists Union*, 16 Cal.2d 379, 382 [106 P.2d 403]:

''It is established in this state that peaceful picketing is a lawful form of concerted action by the members of a labor union (*Lisse* v. *Local Union*, 2 Cal.2d 312 [41 P.2d 314]; *In re Lyons*, 27 Cal.App.2d 293 [81 P.2d 190]), and it was long ago held by this court that the securing of a closed shop contract with an employer is as proper an object of concerted action by employees, as is the attainment of higher wages, shorter hours of labor or better working conditions. (*Parkinson Co.* v. *Building Trades Council*, 154 Cal. 581 [98 P. 1027, 16 Ann.Cas. 1165, 21 L.R.A.N.S. 550]).''

We are not here confronted with a situation in which the

state is attempting to exercise its police power, in which case the exercise of that power by the state could stand consistently with the operation of the federal act, a situation which was commented upon by the court in *Gerry of Calif.* v. *Superior Court, supra,* page 125. ■ It is settled law that injunctive relief against picketing is available where the object sought to be achieved or the means used to achieve it are unlawful. (*Northwestern Pac. R. Co.* v. *Lumber & S. W. Union,* 31 Cal. 2d 441, 445 [189 P.2d 277]) but where, as here, the exclusive power to decide whether unfair labor practices had been engaged in and to determine the action that should be taken to remove or avoid the consequences thereof is committed to the National Labor Relations Board, the trial court is without power to grant injunctive relief. (*Gerry of Calif.* v. *Superior Court, supra,* page 124.)

■ It is argued by respondents that even if the state court might not have authority to issue a binding permanent injunction, it has jurisdiction to issue a temporary writ which will fulfill the function of maintaining the status quo until the National Labor Relations Board has had time to act. We find no merit in this argument. As was held in *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776, supra,* it is not necessary or appropriate for the courts to surmise how the National Labor Relations Board might have decided the controversy; that the power of primary decision lies with the board and that it is vested with power to issue its own complaint and pending final hearing, to seek from the United States District Courts an injunction to prevent irreparable injury while the case is being considered. No California statute affording temporary state injunctive relief under the circumstances here presented has been called to our attention, and the procedure set forth in the Labor Relations Act provides for injunctive relief only in the United States District Courts.

The order for the issuance of the amended preliminary injunction is reversed and the trial court is directed to dissolve the injunction.

Barnard, P. J., and Griffin, J., concurred.