RYAN AERONAUTICAL CO., a California corporation, Plaintiff,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 506, Defendant.

No. 2310–SD–K.

United States District Court
S. D. California, S. D.

Dec. 9, 1959.

B. Kenneth Goodman and Jack G. Whitney, San Diego, Cal., for plaintiff.

Walter Wencke, Nutter & Smith by Jerome Smith, Los Angeles, Cal., for defendant.

KUNZEL, District Judge.

Plaintiff in the instant action seeks by its complaint an order enjoining the defendant from enforcing an arbitration award arising out of dispute involving a labor agreement. Jurisdiction is alleged to exist by virtue of Sec. 10, Title 9 U.S.C.A. and Sec. 301 of the Labor Management Relations Act of 1947 [Sec. 185, Title 29 U.S.C.A.].

The matter comes before the court on an order to show cause why a preliminary injunction pending a trial should not be granted. The court heretofore granted a temporary restraining order pending a hearing on the order to show cause.

A petition by plaintiff to vacate the award of the arbitrators was denied by the Superior Court of the State of California and the judgment of the Superior Court was affirmed by the California District Court of Appeals, Aug. 28, 1959, 343 P.2d 356. A hearing was denied by the California Supreme Court.

The complaint on file alleges the following facts. In 1956 the plaintiff and defendant entered into a collective bargaining agreement wherein it was agreed that the defendant would be recognized as the sole bargaining agent for plaintiff's employees. The agreement further provides that grievances will be submitted to arbitration and that the finding of the arbitrators shall be final and binding upon the parties.

The grievance which was the subject of arbitration here arose when the defendant shut down its plant in 1957 on the Tuesdays before Christmas and New Years. The plaintiff had asked the defendant to exchange the Saturdays preceding the Tuesdays in question. The defendant refused the offer of exchange except on the basis of receiving time-and-a-half for Saturdays' work whereupon plaintiff published a statement blaming the defendant for not reaching a settlement and announcing that the plant would be closed on the two Tuesdays in question. The defendant filed a notice of grievance and both parties agreed to submit the dispute to arbitration.

The following question was submitted to the arbitrators: "Was there a violation of the contract and if so, what is the remedy?" The arbitrators heard evidence and made the following findings and award:

"In the circumstances of this case there was a violation of the Agreement by the Company. Under the Agreement the following conclusions are required:

"A. The Company was entitled to close down the plant on Tuesday, December 24, 1957 and Tuesday, December 31, 1957 in the exercise of its 'right and power to manage the plant and direct the working forces under Article XXVI.

"B. The Company was entitled to propose to the Union that the Union on behalf of its member-employees waive the right established by the Agreement, Article XIV, Section 1(h), to premium pay for work which might be done by members on Saturday, December 28, 1957 and Saturday, January 4, 1958, in exchange for plant shutdowns on Christmas and New Years Eves.

"C. The Union was entitled to decline to waive premium pay rights provided by the Agreement and insist that any work performed by its members on Saturday be compensated at the premium rate.

"D. The Company was not entitled in its bulletins and newspaper to attack the Union for its reliance upon the plain meaning of the Agreement in its provision for premium Saturday pay and to do so constituted a violation of the recognition provision of the Agreement, Article III.

"E. The chronology of negotiation and recrimination and shutdown of the plant on Christmas and New Years Eves, inextricably linking the idea of retaliation by the Company against the Union in the minds of the Company's employees, thereby imposing upon the Union the onus of responsibility for an unpaid shutdown, differentiates this case from the 1953 arbitration involving the right of the Company to shutdown absent other circumstances and constitutes a violation of Article IX, Section 1(b) providing that 'Management will not cause or sanction a lockout.'

"F. The Company shall compensate all employees for the straight time lost by them when the Company wrongfully shutdown the plant on Tuesday, December 24, 1957 and Tuesday, December 31, 1957.

"G. The Company shall post this Award on all plant bulletin boards for a period commencing with the issuance of this Award and ceasing at midnight, May 31, 1958 as an affirmance to its employees of its desire and intent to observe in good faith the provisions of the Agreement recognizing the Union as 'the sole and exclusive bargaining agency' of its employees in the bargaining unit as required by Articles I, II and III thereof."

It is alleged and it was conceded by the defendant that the plaintiff is engaged in the manufacturing of airplanes, drone missiles and like products which affect interstate commerce in a substantial degree.

The plaintiff contends that the arbitrators and the California Courts had no jurisdiction to hear or dispose of the question involved, upon the following grounds:

1. Inasmuch as plaintiff had committed unfair labor practices the National Labor Relations Board by virtue of Sec. 10(a) of the National Labor Relations Act [Sec. 160(a) Title 29 U.S.C.A.] had exclusive jurisdiction to determine the dispute, and

2. The arbitrators and the California Courts by having failed to apply Federal law exceeded their jurisdiction and that, therefore, the Federal Courts have exclusive jurisdiction in accordance with the provisions of Sec. 301 of the Labor Management Relations Act.

▆▆▆ As to plaintiff's first contention—if the dispute here could be said to involve solely unfair labor practices, there would be no question but that the National Labor Relations Board would have exclusive jurisdiction [Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601]. However, even though the arbitrators found and believed that unfair labor practices existed and decreed remedies similar to those that may be decreed by the National Labor Relations Board as provided in Sec. 10(a) of the National Labor Relations Act, the arbitrators also found in response to the question submitted that there was a contract violation by the plaintiff, to wit, a lockout in violation of Article IX (b) of the Agreement. It is apparent that many breaches of labor contracts also constitute unfair labor practices, so that, if plaintiff's contention were adopted, it would virtually abrogate the arbitration provisions contained in a majority of the contracts. Thus, the most logical view is that where there is a contract violation which may also be said to be an unfair labor practice, and the matter is submitted to arbitration in compliance with a contract provision, that jurisdiction to decide the contractual dispute should be in the arbitrators, and the Courts should have the jurisdiction to determine the validity of the award. The above view is sustained by the 9th Circuit in the case of Plumbers, etc., Union, Local No. 598 v. Dillion, 255 F.2d 820 at page 823, where Judge Barnes stated: "The breach of contract may, as here, also be the source of an unfair labor practice cognizable by the N.L.R.B., but the District Court is not thereby deprived of jurisdiction over the private action for breach. Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 1956, 235 F.2d 401." Also supporting is the 5th Circuit case of Lodge No. 12, Dist. No. 37, etc. v. Cameron, etc., 257 F.2d 467 at page 475, certiorari denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110, where the court said,

"* * * Within the spirit of the Lincoln-Mills cases, [Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972] and consonant with other well-reasoned decisions, the fact that the conduct here involved may constitute an unfair labor practice will not prevent it from being also an arbitrable contract violation."

Contrary opinions were expressed in the cases of N.L.R.B. v. Wagner, etc., 7 Cir., 220 F.2d 126, certiorari denied 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850, and United Electrical, etc. v. General Electric Co., 97 U.S.App.D.C. 306, 231 F.2d 259, certiorari denied 352 U.S. 872, 77 S.Ct. 95, 1 L.Ed.2d 76. Of course, such a submission to arbitration would not and could not oust the National Labor Relations Board of jurisdiction to consider the unfair labor practice dispute involved if the Board has not ceded jurisdiction.

Plaintiff's second contention, to wit, that the arbitrators and the State Courts exceeded their jurisdiction because they failed to apply Federal law, has been the subject of considerable legal controversy [57 Col.L.Rev. 52, 59 Col.L.Rev. 269].

▆▆▆ While it is true that Federal substantive law must be applied by the arbitrators and State Courts in decisions

involving contract violations between an employer and a labor organization representing employees in an industry affecting commerce [Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 916, 1 L.Ed.2d 972] the fact that the arbitrators and the State Courts may not have applied Federal law in arriving at their decision should not deprive them of jurisdiction when the parties to the controversy have voluntarily submitted their dispute to such tribunals and abided a final determination. Under such circumstances the Federal District Courts should not have the right or power to make a determination as to whether the arbitrators and the State Courts decided the matter at issue by applying Federal law. The remedy of plaintiff here would be an application to the Supreme Court of the United States for a writ of certiorari. Jurisdiction having been assumed by the State Courts, the final judgment of the State Court becomes res judicata. Research has not produced any cases which support the above views, however, certain language contained in the case of McCarroll v. Los Angeles County, etc., 49 Cal.2d 45, 315 P.2d 322, 329, certiorari denied 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415, supports the views expressed by inference,

"It does not necessarily follow from a decision that federal law governs the rights of the parties that state courts are ousted of jurisdiction to enforce those rights. As Mr. Justice Bradley stated in Claflin v. Houseman, 93 U.S. 130, 136, 23 L.Ed. 833, '[I]f exclusive jurisdiction [in the federal courts] be neither express nor implied, the State courts have concurrent jurisdiction [to enforce federal rights] whenever, by their own constitution, they are competent to take it.' Concurrent jurisdiction exists 'where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.' See Gerry of California v. Superior Court, 32 Cal.2d 119, 122–123, 194 P.2d 689."

At various times during the proceeding counsel for plaintiff has also contended that Sec. 301 confers exclusive jurisdiction upon the Federal Courts to consider disputes of the character here involved. This contention is not logical in view of the use of the word "may" in the section [See McCarroll v. Los Angeles, etc., supra, 49 Cal.2d at page 59, 315 P.2d 322].

In accordance with the above opinion the temporary restraining order is dissolved, the petition for a preliminary injunction is denied, and the complaint is dismissed on the Court's own motion on the ground that on its face it appears that the cause of action is res judicata.