[L. A. No. 22750. In Bank. Dec. 2, 1955.]

CHARLES H. BENTON, INC. (a Corporation), Respondent, v. PAINTERS LOCAL UNION NO. 333 et al., Appellants.

678

P. H. McCarthy, Jr., F. Nason O'Hara and Herbert S. Johnson for appellants Painters Local Union No. 333 and United Slate, Tile & Composition Roofers Local No. 45.

Thomas Whelan for appellant Building Materials & Dump Truck Drivers Local No. 36.

Gray, Cary, Ames & Frye, James W. Archer and Ward W. Waddell, Jr., for Respondent.

EDMONDS, J.—The questions presented in this case are substantially the same as those decided in *Garmon* v. *San Diego Bldg. Trades Council, ante,* p. 657 [291 P.2d 1]. Here, as in the Garmon case, the appeal is from a judgment enjoining the unions from engaging in certain activities and awarding the employer damages.

The findings of fact may be summarized as follows:

Charles H. Benton, Inc., is a California corporation whose business is the mixing and selling of paint and paint supplies in interstate commerce. It is also engaged in the roofing business, but no express finding was made that this phase of the business did or did not affect interstate commerce.

The painters' and truck drivers' unions advised the company that they intended to organize its employees in the paint business. Thereafter, on several occasions, they presented a proposed contract which included a provision that "the employer hereby agrees that the above listed Unions shall be the sole and exclusive bargaining agent for all employees. It is further agreed that new employees, not already members of the unions, shall, within thirty days, become and remain members of the Union as a condition of continued employment." The company refused to enter into the contract, asserting that it would be illegal for it to do so unless and until its employees had designated the unions as their collective bargaining representatives. It requested the unions to join with it in appropriate steps to ascertain if its employees desired such representation. After negotiations with union representatives, the employees refused to allow the unions to act for them. Neither union has been recognized by the National Labor Relations Board as the representative of the employees.

The two unions then picketed plaintiff's place of business. The picketing was intended to compel the employer "by means of pressure brought upon plaintiff's business through defendant" roofers' union and plaintiff's roofer employees "by the refusal" of those employees "to continue employment" while the pickets were maintained and to compel the company to sign the offered contract "in the belief that if such a contract is executed and put into effect, the employees of the plaintiff will join, or be compelled to join, the defendant Unions, and that no unfair labor practice charge will be filed with the National Labor Relations Board." The picketing was not intended to educate Benton's employees or to inform them of the benefits of unionization.

The roofers' union has caused roofer employees to refuse to work for the company, and has continued its strike, thereby disrupting the roofing business to the damage of the company. There is an existing contract between the roofers' union and the company with respect to the roofing employees and their wages, hours and working conditions. This contract provides: "The Employer shall call upon the Union for such men as he may from time to time need, and the Union shall furnish the Employer the required number of qualified and competent workmen needed by the Employer, qualifications and competency to be determined by the Employer. . . ." By other provisions the union and the employer agreed "that there shall be no strikes or lockouts during the life of this Agreement and that any and all grievances or controversies which may arise with respect to the interpretation or application shall be settled as hereinafter provided." Any dispute not settled by a conciliator, appointed by the parties, was to be referred to a conference board composed of equal representatives of each party, with an additional number if necessary. The roofers' union refused to follow this procedure in the present controversy.

Upon these findings the court rendered a judgment which enjoins the unions from picketing the company's place of business, inducing employees to leave work or doing any other acts tending to injure the business in order to compel the company to execute the proffered contract until one of the two unions has been properly designated as the collective bargaining agent for the employees. The roofers' union is enjoined from "inducing any roofers employed by the plaintiff to refuse to work for the plaintiff, or from calling or inducing any work stoppage among the roofers employed by the plaintiff, or from refusing to make reasonable efforts to supply competent roofers to plaintiff upon request, so long as the contract between plaintiff and said defendant shall remain in effect, and requiring the said defendant to inform its members that they will not be discriminated against, fined, or otherwise disciplined for working for the plaintiff." The judgment also awards damages of $2,243.78 against the defendants.

As grounds for reversing the judgments the painters' and truck drivers' unions assert that the trial court lacked jurisdiction to enjoin their activities or to award damages against them, because a labor dispute in a business affecting interstate commerce is exclusively within the jurisdiction of the National Labor Relations Board. They contend also that they did

not violate the law of this state. The roofers' union claims that its contract with the employer is illegal under the National Labor Relations Act, and therefore unenforceable by either party. But it also insists that it did not violate the collective bargaining procedure specified by that contract. The company argues that, regardless of federal law, the violation by the painters' and truckers' unions of California statutes vested the courts with jurisdiction to enforce them. The judgment against the roofers' union is said to be justified because it breached the collective bargaining agreement.

The facts as found by the trial court do not support the injunction against the painters' union and the truckers' union. ■ As the employer's paint business affects interstate commerce, in the first instance, jurisdiction of the controversy with the unions vested exclusively in the National Labor Relations Board. (See *Garmon* v. *San Diego Bldg. Trades Council, ante,* p. 657 [291 P.2d 1]; *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228]; *Weber* v. *Anheuser-Busch, Inc.,* 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546].) ■ The employer's petition for a determination of representation was dismissed by the board upon the ground that the unions named in the petition did not claim to represent the unit of employees for which the petitioner sought an election. This was not a refusal to take jurisdiction, but only a declaration that the petitioner was not entitled to an election under the provisions of the act. ■ The general pronouncement of the national board that it will exercise jurisdiction only in cases in which the company's business in interstate commerce exceeds a certain minimum amount is not sufficient to automatically confer jurisdiction on a state court where an employer's operations do not come up to that minimum. (*Kinnard Const. Co.* v. *Building Trades Council,* 346 U.S. 933 [74 S.Ct. 373, 98 L.Ed. 423].) ■ The state court has jurisdiction to award damages to the employer if the evidence shows that it is entitled to them under state law. (*United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025].) ■ However, independently of rights given under the federal statutes, under California decisions an employer may not obtain relief from economic pressure asserted in an effort to compel him to sign a union shop agreement. ■ The federal statutes give the parties to a labor dispute rights in addition to those afforded by state law. Although the state court may enforce

those rights through the traditional tort remedies of injunction and damages (*Garmon* v. *San Diego Bldg. Trades Council, ante, p.* 657 [291 P.2d 1]), it may not assume jurisdiction of the controversy unless the National Labor Relations Board has declined to act. An employer in that situation is in much the same position as one who has failed to invoke his administrative remedies. (*Cf. Gerry of Calif.* v. *Superior Court,* 32 Cal.2d 119, 129 [194 P.2d 689].)

■ Similarly, the employer may not obtain relief from the acts of the unions in inducing the roofers' union to breach its contract, an activity which under California law unaffected by the federal legislation is privileged. (*Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].)

The court found that the roofers' union breached its contract by calling a strike of the roofing employees and inducing them to refuse to work for the employer in aid of the campaign of the other two unions. Under the contract, the roofers' union agrees to furnish employees to Benton and "that there shall be no strikes or lockouts during the life of this Agreement and that any and all grievances or controversies which may arise with respect to the interpretation or application shall be settled" by arbitration. The employer covenants that employees shall not be discharged for "recognizing authorized picket lines" established by any affiliate of the American Federation of Labor.

"Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State." (Lab. Code, § 1126; see cases collected 2 A.L.R.2d 1278.)

■■ The roofers' union argues that, because of its closed shop provision, the contract is illegal under the federal law and hence not enforceable. As to Benton's business, the court found: "Plaintiff is . . . engaged in the business of mixing and selling paint and paint supplies; that during the year July 1, 1951 to June 30, 1952, plaintiff made sales of its said products in the aggregate amount of approximately $178,910.10 directly in interstate and foreign commerce; with respect to the said business plaintiff is engaged in and its business affects interstate commerce. Plaintiff is and for several years has been also engaged in the roofing business in the City of San Diego and neighboring areas within the County of San Diego, State of California." It reasonably

may be implied from this finding that Benton's roofing business does not affect interstate commerce. The federal law, therefore, is not applicable, and a closed shop agreement is not invalid under California laws.

■ The roofers' union contends, however, that even if the agreement is enforceable, there has been no breach of it because the no-strike agreement pertains only to disputes arising out of the contractual provisions for wages, hours, and working conditions. The obvious purpose of the contract is industrial peace between the parties. Its terms, binding the employer not to lock out the employees for any reason and the union not to interrupt the employer's business by labor difficulties, refutes the union's claims as to its rights.

The judgment as to the truckers' and painters' unions is reversed. As to the roofers' union it is affirmed. Each party shall bear its own costs on appeal.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in the conclusion reached by the majority but do not agree with the reasoning of the majority with respect to the power of a state court to enforce the provisions of the National Labor Management Relations Act as announced in *Garmon* v. *San Diego Bldg. Trades Council, ante,* p. 657 [291 P.2d 1], and I adopt the views expressed in my dissent in the Garmon case on this proposition.

Gibson, C. J., and Traynor, J., concurred.