[Civ. No. 5705. Fourth Dist. Feb. 21, 1958.]

J. DALE GENTRY, Respondent, v. CULINARY WORKERS, BARTENDERS AND HOTEL SERVICE EMPLOYEES, LOCAL 535, AFL-CIO (an Unincorporated Association) et al., Appellants.

*Assigned by Chairman of Judicial Council.

Lewis Garrett and Lionel Richman for Appellants.

Bert L. Lunceford for Respondent.

WAITE, J. pro tem.*—Plaintiff filed this action to enjoin defendants from maintaining a picket line at or about the California Hotel in San Bernardino, and the court granted an injunction.

While the evidence was in many respects conflicting, such conflict was resolved by the trial court and a review of the transcript reveals the following to be a fair summary of the material facts: Following certain preliminary negotiations between plaintiff and representatives of the Central Labor Council of San Bernardino County, Mr. Rees, executive secretary of the defendant union, together with Mr. DeWolfe, of the State Conciliation Service and Mr. Miramonte, the union organizer, met with plaintiff and Mr. Stone, his hotel manager, on August 28, 1956. Mr. Rees said that the union proposed to organize the hotel employees and a discussion was had concerning the proper method to be used for determining whether a majority of the employees desired the union as their representative. Finally, it was agreed to hold an election by secret ballot and Mr. DeWolfe stated that he would write a contract which provided that if the election results were favorable to the union, plaintiff would agree to negotiate with the union, but if such results were unfavorable to the union, then the union would agree not to bother or molest plaintiff or the hotel employees for one year. Mr. Rees stated that if plaintiff would agree to an election the union, if it lost the

*Assigned by Chairman of Judicial Council.

election, would not bother plaintiff and would take no action for one year to organize the employees.

Mr. DeWolfe then prepared a Memorandum of Agreement For Representation Election, using the printed form provided by the State Conciliation Service, and plaintiff signed the agreement, relying on the representations above mentiond. Mr. Rees also signed the agreement on behalf of the union. Paragraph 11 of the agreement provides:

"It is further agreed that the results of this election shall be accepted as binding on both parties for a period of not less than one (1) year from date of this Agreement.

"In the event the Union wins the election the Employer agrees to bargain upon request, with the Union as the exclusive representative of all the employees in the above Unit in respect to rates of pay, wages, hours of work or other conditions of employment, and if any understanding is reached on such matters, embody such understanding, upon request, in a signed agreement; and in the event the Union loses the election it agrees to refrain from raising the question of representation for the time specified above."

After the memorandum of agreement was executed, arrangements were made to hold the election on September 6, 1956, as provided in paragraph 2 thereof. On the afternoon of September 4, 1956, plaintiff and Mr. Stone met with the employees of the hotel. Prior thereto, a notice signed "The Management" had been posted on the bulletin board, stating that the meeting would be held and urging all employees to be present. Apparently a majority of the employees attended this meeting, but the evidence did not show that all of the employees were there. Plaintiff and Mr. Stone each addressed the employees and some of the employees also spoke. Plaintiff informed those present that he had been approached by the union to represent the employees and that he had signed an agreement for the holding of an election. He explained the agreement, pointed out that the vote would be by secret ballot, that each employee was to vote as he desired and he urged the employees to vote. He stated that if a majority of the employees favored the union, he would try to negotiate a contract with the union. He also pointed out some of the advantages and disadvantages of the union and invited those present to express themselves if they so desired. At this meeting Mr. Stone had a copy of the union's form of contract. He went over some but not all of the provisions of this contract briefly and compared them with what was then being done at

the hotel so far as working conditions and rates of pay were concerned. No official representatives of the union were present at the meeting of September 4, but several employees of the hotel who were members of the union were in attendance, which fact was known to plaintiff and to Mr. Stone.

On the evening of September 4, Mr. Rees attended a meeting at which there were present nine or 10 persons, including Mr. Miramonte and some of the hotel employees. Mr. Miramonte reported concerning the meeting which had been held that afternoon between the plaintiff, his manager and the employees, and related what had been told to him by some of the union employees who had attended the meeting. According to them, plaintiff and Mr. Stone had made anti-union remarks and had not correctly stated all of the facts. At that time Mr. Rees did not question any of the hotel employees who were in attendance at the afternoon meeting at the hotel, nor did he contact either plaintiff or Mr. Stone for the purpose of ascertaining the correctness of the report made by Mr. Miramonte. Based upon the information so received with respect to the afternoon meeting, Mr. Rees decided to protest the election and he also prepared a letter addressed to the hotel employees which was circulated the next morning, September 5. This letter stated, among other things, that Mr. Rees, as secretary of the union, had been informed of the meeting of September 4, and he stated matters in argument for a vote favorable to the union in the election to be held the next day. The letter closed by urging all employees to vote "Yes" at the forthcoming election.

On the morning of September 6, a few minutes before the time scheduled for the election, Mr. Rees and Mr. DeWolfe again met with plaintiff and Mr. Stone. Mr. DeWolfe stated that Mr. Rees had decided not to hold the election because he felt that plaintiff and Mr. Stone had had a captive audience in the afternoon meeting of September 4, and that Mr. Rees thought the election would be unfavorable to the union. Immediately prior to this meeting Mr. Rees and Mr. DeWolfe had met with Mr. Dase, plaintiff's designated representative at the election, for the purpose of inspecting the election facilities. Mr. Rees also stated, in the presence of Mr. Dase, that he did not think he wanted to proceed with the election; that he had heard about plaintiff's meeting with the employees; that he was not given the same opportunity to meet with them and the meeting was an unfair labor practice. Mr.

DeWolfe informed plaintiff that there was no way to enforce the election in view of Mr. Rees's decision. Mr. DeWolfe asked plaintiff if he would agree to call off the election, which plaintiff refused to do, stating that he was ready to go ahead. Mr. Rees never again met or asked to meet with plaintiff, and on September 11, 1956, the picketing of the hotel began and continued to the time the injunction in this case was granted.

The trial court stated that the issues for its determination were: (1) Is the election agreement valid and enforceable? (2) If valid, was the union excused from the performance thereof by reason of the acts of the plaintiff? (3) If valid and the performance thereof by defendants was not excused, will an injunction lie to prohibit the picketing? The court held that the election agreement was valid and enforceable, that the union was not excused from the performance thereof by reason of the acts of plaintiff, and granted an injunction prohibiting picketing until such time as the union complies with the provisions of the Memorandum of Agreement For Representation Election dated August 28, 1956. Defendants appealed from that judgment and raise two points on this appeal: (1) That plaintiff was guilty of material breach of contract so as to relieve defendants of any obligation to perform; (2) That the relief granted is too broad.

Although the insufficiency of the evidence to support the decision of the trial court is not specifically urged by appellants, it is clear that their first point, in effect, challenges the sufficiency of that portion of the evidence which prompted the court's conclusion that respondent had not been guilty of acts constituting a material breach of the contract so as to excuse appellants from performance. It is on this phase of the evidence that the major conflicts in the testimony appear and our duty therefore is to ascertain whether the record contains any substantial evidence to support the findings upon which the court's decree is based. As this court said in a recent case:

"While the question of the sufficiency of the evidence, as a matter of law, to support a verdict or finding may be presented to the appellate court for review, its duty stops when it has determined that there is some substantial supporting evidence." (*Patterson* v. *Beauvell*, 155 Cal.App.2d 411, 414 [318 P.2d 71]; 4 Cal.Jur.2d p. 482, § 602.)

■ In the instant case, without reciting in detail all of the conflicting testimony, suffice it to say that there is much

evidence of a substantial character which supports the finding of the trial court that respondent did not breach the contract materially. (See *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183] ; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157] ; *Overton* v. *Vita-Food Corp.,* 94 Cal. App.2d 367, 370 [210 P.2d 757].)

The only remaining contention of appellant is that the relief granted is too broad in that the injunction prohibits all picketing by appellants at respondent's hotel until the union has complied with the terms of the agreement of August 28, 1956. In this connection it is urged: (1) That the injunction must be limited to picketing for the purpose of recognition only; and (2) That the duration of the injunction is too broad and uncertain.

The position taken by appellants that the picketing was for organizational purposes and to advertise substandard wages and working conditions at respondent's hotel was labeled a subterfuge by the trial court. It found specifically that the picketing was being done for the purpose of attempting to gain exclusive recognition as the bargaining representative of respondent's employees and that finding is supported by substantial evidence. It is true, as contended by appellant, that where an unlawful demand may be divorced from concerted action otherwise lawful, it is permissible for the court to enjoin defendants from making such demand but not to prohibit the lawful activity. (*Park & Tilford Import Corp.* v. *International etc. of Teamsters,* 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426].) In the instant case both the picketing and the real objectives thereof are in violation of the agreement and for that reason are unlawful. It is well established that the right to picket for any purpose may be lawfully surrendered by a valid agreement. (Cal. Lab. Code, § 1126; *Charles H. Benton, Inc.* v. *Painters Local Union,* 45 Cal.2d 677, 682 [291 P.2d 13] ; *Lion Oil Co.* v. *Marsh,* 220 Ark. 678 [249 S.W.2d 569].)

The claim of appellants that the duration of the injunction is too broad and uncertain is not well taken. They argue that it is difficult, if not impossible, to determine whether picketing could have been resumed on September 6, 1957, or whether the prohibition continues until some period after the union submits to an election. The clear, unequivocal language of the decree places responsibility for the duration thereof directly on appellants. It is unmistakably certain that the picketing is enjoined "until the matter of representa-

tion of plaintiff's employees . . . has been settled by an election in accordance with the procedure specified in the said agreement and until such time as the defendant Union has complied with the terms and conditions of the said agreement . . .'' This language cannot possibly be construed to permit resumption of picketing on September 6, 1957, and we interpret it to mean exactly what it states.

Other contentions made by appellants in the trial court have not been raised on this appeal and we assume that such have been abandoned.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 21, 1958, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1958. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.