Herbert D. Hamm, J.
The plaintiff Leo ICatz, “ doing business as heler-e’s retail outlet ”, seeks a temporary injunction against the defendants’ picketing. The plaintiff’s retail outlet is located in the same building with Helene Manufacturing Co. Helene Manufacturing Co. performs part of the manufacturing operations for Smart Sue, Inc., a “ struck ” plant not located in Catskill. The building at which picketing is taking place is located on the corner of West Bridge and Division Streets in the Village of Catskill. There is an alley leading from Division Street and in the rear of the building, on which there is located *258 an employees’ entrance to Helene Manufacturing Co. In the approximate center of the front of the building on West Bridge Street there is a large sign 1 ‘ helene manufacturing go. ’ ’. Underneath the sign is a garage door of sufficient width to permit automobiles to enter. Beyond the garage door and toward Division Street are plate-glass windows in which mannequins are displayed and over which a sign ‘ ‘ retail outlet ’ ’ appears. Between the garage door and the windows of the retail outlet there is a door for admission of retail customers. The manufacturing company is a partnership conducted, as it was stated on the argument, by the plaintiff in conjunction with his wife.
As to the right to picket Helene Manufacturing Co., there is no serious issue. Smart Sue, Inc., sends merchandise to Helene Manufacturing Co. to be sewn into garments. In the performance of work for Smart Sue, Inc., the premises of the contractor Helene Manufacturing Co. are merely an extension of the premises of the jobber Smart Sue, Inc. As a matter of fact the Landrum-Griffin Act, when effective (Labor-Management Reporting and Disclosure Act of 1959 [Pub. Law 86-257; 73 U. S. Stat. 519 et seq.~), § 704, subd. [b], adding subd. [e] to National Labor Relations Act, § 8; U. S. Code, tit. 29, § 158, subd. [e]) provides that its more restrictive provisions relating to secondary boycotts shall not apply to ‘1 persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry ’ ’. As the defendants have a right to picket Helene Manufacturing Co., they can hardly be required to confine their picketing to the alley when the sign ‘ ‘ helene manufacturing co. ’ ’ is prominently displayed on the front of the premises.
This, however, does not constitute a solution. The defendants concede their picketing in front of the building is not merely an incident to picketing the manufacturer but includes also the retail outlet and they state themselves one of the signs contains an exhortation to join their union and is not confined to the jobber-processer dispute. The plaintiff contends that the retail outlet is a separate entity not involved in the controversy between Smart Sue, Inc., and Helene Manufacturing Co. He alleges in his affidavit:
“ That the said building has separate entrances for the factory and retail store and the factory entrance is clearly marked as such and is used exclusively by the employees of the factory. That no employees of the factory enter through the retail store.
*259 “ The retail store and the factory are operated as completely separate entities, each having its own manager. Edith Petra-male is manager of the retail store and Morris Weinstein is manager of the factory. The employees of the factory are paid separately by the retail store for any work which the factory does for the retail store. Separate tax returns are filed for each business. Separate bank accounts are kept for each business and separate sets of bookeeping records are kept for each business.”
On the other hand the defendants have submitted an affidavit from a former employee of Helene Manufacturing Co. This affidavit states in part:
“ 5. The fact that Helene Manufacturing Co. constitutes a single business enterprise that operates both a factory and a store is evidenced by many things. First, there is the physical layout of the premises of Helene Manufacturing Co. Both the store and the factory are located in one building and the only name appearing on that building is that of Helene Manufacturing Co., which name appears only on the West Bridge Street side of the building, the side that Mr. Katz says is used only for the store entrance. Nowhere does the name ‘ Helene’s Retail Outlet ’ appear on the building, although the words ‘ Retail Outlet ’ do appear on a sign to the right of the sign bearing the name ‘ Helene Manufacturing Co.’ The position and relative importance of the two signs gives the impression that the ‘ Retail Outlet ’ referred to is the retail outlet of Helene Manufacturing Co. The truth of these factual statements is apparent from the photograph of the building attached hereto as Exhibit ‘A’, which was taken on Wednesday, September 30, 1959.
‘ ‘ The premises of the store are physically connected with the premises of the factory by three doors, two of which are in constant use by employees of Helene Manufacturing Co., Mr. Katz, customers who come into the store, and others. In fact, when I started working for Helene Manufacturing Co. and for several months thereafter, the goods for the factory would be delivered through the large truck entrance on West Bridge Street immediately under the sign bearing the name ‘ Helene Manufacturing Co.’, which entrance appears as Exhibit ‘A’. Employees often enter the factory through the West Bridge Street entrance, passing through the store. There is only one time clock on the premises and that is used by both store and factory personnel. Job applicants for positions in the factory or the store apply for positions at the store, through the store entrance. There is only one office on the premises. In that office, one bookeeper makes up the payroll for all employ *260 ees of Helene Manufacturing Co., those employed in the factory as well as those employed in the store. Workers go through the store entrance to go to the office for their pay. Customers from the store are brought into the factory and sometimes purchase garments directly from the factory racks and bring them back to the store, where they pay for them. It is therefore, clear that, contrary to Mr. Katz’s assertion, the factory and the store do not have separate premises with separate entrances and exits, and that the entire premises of Helene Manufacturing Co. are used both for factory and store purposes.
‘ ‘ 6. Furthermore, supervision of employees in the factory and the store is carried on by the same person. Mr. Katz is in and out of both the factory and the store, directing the work of the employees in both places. A lady, whose first name is Edith and whose last name I do not know, acts as manager of both the factory and the store. In the store she sells to customers, packages goods, takes cash, and is in general charge of the other employees. In the factory she instructs workers on how to do their jobs, tells the workers what their rates will be for performing certain operations on the garments, schedules overtime for workers, and is also in general charge of the workforce.
1 ‘ In addition, factory personnel perform store work, and store personnel come into the factory to sell garments right from the factory racks. Thus, operators and pressers who work in the factory are required to make repairs and alterations on garments purchased in the store by customers. And I personally was required to help in the store by stocking shelves and perfoming other miscellaneous chores. For this store work I drew only my regular salary from Helene Manufacturing Go.
“A man, whose first name is Al and whose last name I do not know, works for Helene Manufacturing Co. in both the factory and the store. In the factory he sorts and lays out the work for the other employees and brings dresses from the factory into the store. In the store he acts as a pickup and delivery man, using a station wagon that is als,o used for factory purposes. He does the janitorial work for both the factory and the store.
“7. In addition to these facts I am informed by my attorney and believe that as of September 30,1959, no certificate of doing-business under an assumed name has ever been filed in Greene County for a business called ‘ Helene’s Retail Outlet ’. There is no record of a ‘ Helene’s Retail Outlet ’ in either the assumed name index, the partnership name index, or the corporate name index in Greene County.”
*261 Even assuming the retail outlet to he a separate entity, the defendants assert that Helene Manufacturing Co. constitutes a single business operating both a factory and a store and hence it is ineluctable that the picketing, insofar as it is organizational in purpose, is to organize all the employees in the building whether they work full time in manufacturing or full time in retailing or part time in both. Such an objective is legal and, where Federal pre-emption is absent, it falls within the protective ambit of section 876-a of the Civil Practice Act (Wood v. O’Grady, 307 N. Y. 532).
Moreover, the defendants contend that the plaintiff is selling dresses manufactured for Smart Sue, Inc. The plaintiff denies ever having had ‘ ‘ for sale in his store any dresses produced in the Helene factory for ‘ Smart Sue Inc. ’ ” And there it ends. But the sign ‘ ‘ retail outlet ’ ’ indicates, and I think clearly, that the retail store is an outlet of the manufacturing company and that the plaintiff sells dresses fabricated by Helene Manufacturing Co., although they may not have been manufactured for Smart Sue, Inc. If so, the defendants are not guilty of, as claimed by the plaintiff, “ an illegal secondary boycott ”. Both retailer and manufacturer are in the women’s dress business. Even if the store and the factory are regarded as distinct entities as employers, the defendants may follow the nonunion goods and seek by peaceful picketing to persuade the consuming public from purchasing the nonunion product at the store of the retailer in the same line of business and in unity of interest with the manufacturer (Goldfinger v. Feintuch, 276 N. Y. 281). At page 290 Chief Judge Lehman, then Associate Judge, stated: “ I agree that peaceful picketing of the plaintiff’s place of business by the defendant union for the purpose of inducing the plaintiff’s customers to refrain from buying non-union products of a manufacturer, which are on sale by the plaintiff, is lawful. That is not a ‘ secondary boycott. ’ ” The burden of showing that no labor dispute exists is on the plaintiff and, to show absence of a labor dispute, the plaintiff must show no unity of interest between his business and Helene Manufacturing Co., with which the defendants have a grievance (Park Terrace Caterers v. McDonough, 9 A D 2d 113). Assuming arguendo that the plaintiff is a separate entity, he has failed to sustain the burden of showing that no labor dispute exists.
Finally the question of jurisdiction is serious. The affidavits as to interstate commerce submitted by the defendants have not been disputed. Smart Sue, Inc. is engaged in the manufacture and sale of women’s garments with reported nationwide sales of more than $3,000,000 in 1957 and 1958. A former employee *262 of Helene Manufacturing Co. alleges that during approximately 40 weeks of his employment, which terminated in June, 1959, Helene Manufacturing Co. received more than $100,000 for manufacturing dresses for Smart Sue, Inc.
In Columbia Broadcasting System v. McDonough (8 A D 2d 695), the memorandum decision states: “Order unanimously reversed on the law, the temporary injunction vacated, and the motion for temporary injunction denied, with costs to the appellants. Where, as here, there is an arguable question of jurisdiction, determination in the first instance must be left to the National Labor Relations Board and the State courts are not primary tribunals to adjudicate such issue. (San Diego Unions v. Garmon, 359 U. S. 236.) ”
Retail Clerks’ Union, Local No. 1364 v. Superior Court (339 P. 2d 839 [Cal.], cert, denied 361 U. S. 864) has not been cited but it may be well to mention that the refusal of the Supreme Court of California in a prohibition proceeding to consider solely on mere admitted conclusions of law the issue of Federal pre-emption apparently does not detract from the decision in San Diego Unions v. Garmon (359 U. S. 236).
The motion is denied.
The number of pickets is reasonable. The signs are not false and misleading. Complaints as to alleged over-parking by pickets are not impressive; in fact there are no allegations of any violation of any village ordinance. Two affidavits from customers have been submitted. One customer states that a picket remonstrated with her for parking and stated that the plaintiff was buying goods from Japan and the other customer states that she was told ‘ ‘1 you are not allowed to park your car there, as the police are keeping all cars away ’ ”. On the argument counsel for the defendants stated that it was desired that the picketing be orderly, peaceful and free from unlawful acts. Pursuant to the statement of counsel the order to be submitted may contain a prohibition against enjoinable tortious conduct (Allen-Bradley Local v. Board, 315 U. S. 740).